UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                          :
DYLAN NEWMAN, individually and on behalf of   :
all others similarly situated,                            :
                                                          :
                              Plaintiff,                  :            25-CV-00178 (JAV)
                                                          :
              -v-                                         :            OPINION AND ORDER
                                                          :
GREP ATLANTIC, LLC and NEW YORK          :
UNIVERSITY,                                               :
                                                          :
                              Defendants.                 :
                                                          :
------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

       Plaintiff Dylan Newman ("Newman"), a former tenant in a Manhattan

residential building, brings this action against Defendants GREP Atlantic, LLC

("GREP" or "Greystar")[1], the building's property manager, and New York University

("NYU"), the current owner of the building (collectively, "Defendants").  ECF No. 1,

¶¶ 21, 24.  Plaintiff alleges that Defendants violated New York General Obligations

Law § 7-103(2-a) and brings claims individually and on behalf of members of a

putative class of similarly situated tenants in buildings managed or owned by

Defendants.  ECF No. 40 ("Complaint" or "Am. Compl."), ¶¶ 30, 40.  Defendants

move to dismiss the action, or in the alternative strike the class allegations from

---

[1] Plaintiff's original complaint named Greystar Real Estate Partners, LLC and
Greystar Management Services L.P. as Defendants.  ECF No. 1.  On March 21,
2025, the parties filed a joint motion stipulating to substitute those Defendants
with GREP Atlantic, LLC pursuant to Federal Rule of Civil Procedure 25(c).  ECF
No. 24.

Plaintiff's complaint.  ECF No. 44 ("GREP Mot. to Dismiss") at 25; ECF No. 47 ("NYU Mot. to Dismiss") at 25.  For the reasons stated below, this matter is DISMISSED.

**FACTUAL ALLEGATIONS**

The following background is derived from the First Amended Class Action Complaint and the lease agreements referenced throughout the Complaint.  The allegations are accepted as true and construed in the light most favorable to Plaintiff.

Between June 2021 and August 2024, Newman and his wife, a non-party, rented an apartment unit in a residential building known as "The Lanthian," located at 377 E 33rd St, New York, NY.  Am. Compl., ¶¶ 10-13.  The Lanthian is a "a full-service luxury residential rental building that houses 209 rental units."  Am. Compl., ¶ 10.  For most of Plaintiff's tenancy, the building was owned by Verbena E 33rd LLC ("Verbena"), a non-party in this matter, until September 2023, when Defendant NYU purchased the building.[2]  *See id.* ¶ 20; ECF No. 45-5, ECF No. 45-6 ("2023 Lanthian Deed").  Defendant Greystar has maintained the role of property manager across Verbena and NYU's ownership.  Am. Compl., ¶ 19.

Plaintiff signed his initial lease in June 2021 for the period of July 19, 2021, to August 18, 2022, paying a $1000 security deposit pursuant to its terms.  Am. Compl., ¶¶ 10, 12; ECF No. 45-1 ("2021 Lease") at 1.  Plaintiff renewed his lease

---

[2] Verbena Road Holdings, LP was a named defendant in Plaintiff's original complaint but was removed in Plaintiff's First Amended Class Action Complaint. *See* ECF No. 1 at 1; Am. Compl. at 1.

twice, first for a lease term of August 19, 2022, to August 18, 2023,, and again for a

lease term of August 19, 2023, to August 18, 2024.  Am. Compl. ¶ 13; ECF Nos. 45-2

("2022 Lease") at 1, 45-3 ("2023 Lease") at 1.

The 2023 Lease included a rider titled "Class Action Waiver" ("Class Action

Waiver" or "Waiver").  ECF No. 45-4.  The rider appears as a standalone document

in the lease renewal and was signed by Plaintiff and his wife on July 23, 2023.  *Id*.

The Class Action Waiver reads as follows:

> CLASS ACTION WAIVER: You agree that you hereby waive your
> ability to participate either as a class representative or member of any
> class action claim(s) against us or our agents.  While you are not
> waiving any right(s) to pursue claims against us related to your
> tenancy, you hereby agree to file any claim(s) against us in your
> individual capacity, and you may not be a class action plaintiff, class
> representative, or member in any purported class action lawsuit
> ("Class Action").  Accordingly, you expressly waive any right and/or
> ability to bring, represent, join, or otherwise maintain a Class Action
> or similar proceeding against us or our agents in any forum. . . .  By
> signing this lease, you accept this waiver and choose to have any
> claims decided individually.  The provisions of this section shall
> survive the termination or expiration of this lease.

*Id*.  Plaintiff does not refute that he and his wife voluntarily signed this provision as

a part of the 2023 Lease.[3]

In August 2024, near the expiration of their final lease, Plaintiff and his wife

emailed The Lanthian's manager and assistant manager to announce that they

were moving out and provide a new address for return of their security deposit and

its accrued interest.  Am. Compl., ¶ 14.  Plaintiff received a $1000 return, reflecting

---

[3] In fact, considering the differing timestamps associated with Plaintiff's signatures
throughout the 2023 Lease, it appears that the Waiver rider was signed separately
from the rest of the documents.  *Compare, e.g.,* 2023 Lease at 33 *with id.* at 56.

the exact amount he and his wife initially put down as their security deposit.  *Id.*, ¶ 16; *see* 2021 Lease at 1.  In response to Mr. Newman's inquiry about missing accrued interest, Defendants responded "that the interest rate did not exceed 1%." Am. Compl., ¶ 17.

## PROCEDURAL BACKGROUND

The First Amended Class Action Complaint principally alleges that "Defendants failed to return the interest accrued on renters' deposits to tenants and failed to place security deposits in an account that accumulated interest at the 'prevailing rate earned by other such deposits made with banking organizations in such area'" in violation of Section 7-103 of New York General Obligations Law. Am. Compl., ¶ 7 (quoting N.Y. Gen. Oblig. L. § 7-103(2-a)).  Plaintiff brings this claim individually and on behalf of two putative classes of similarly situated renters.  Specifically, Mr. Newman seeks to represent a class of "all persons who rented a residential apartment from Defendants in the United States, paid a security deposit to either of the Defendants, and did not receive accumulated interest on their security deposits from Defendants after vacating their rental units," as well as a New York subclass specifically for renters in the state of New York.  Am. Compl., ¶¶ 30-31.

The complaint alleges that the Court has subject matter jurisdiction over Plaintiff's claims under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because there are over 100 putative class members, the aggregate amount in controversy exceeds $5,000,000, and the minimum diversity requirement

is satisfied (i.e. at least one class member is a citizen of a state different from any defendant).  Am. Compl., ¶ 27.

Defendants filed separate motions to dismiss on June 13, 2025.  Both Greystar and NYU argue (1) that the Class Action Waiver precludes Plaintiff's class allegations against them; (2) that Plaintiff failed to join necessary parties pursuant to Rule 19; (3) that the Complaint relies on impermissible group pleadings in violation of Federal Rule of Civil Procedure 8(a);  and (4) that Plaintiff fails to state a claim for which relief can be granted.  GREP Mot. to Dismiss at 6, 9, 12, 16; NYU Mot. Dismiss at 5, 8, 10, n.6.  Defendants seek dismissal of all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6), and in the alternative seek to have the class allegations stricken from Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f).  GREP Mot. to Dismiss at 25; NYU Mot. to Dismiss at 25.

## **LEGAL STANDARDS**

### **A.   Rule 12(b)(6)**

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the non-moving party. *Romanova v. Amilus Inc*, 138 F.4th 104, 108 (2d Cir. 2025).  "A district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Revitalizing Auto Communities Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024).  "Moreover, even if

a document is not expressly incorporated by reference, the court may still consider it if the complaint relies heavily upon its terms and effect, rendering the document integral to the complaint." *Id.* (cleaned up).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [the standard] requires more than labels[,] conclusions, and a formulaic recitation of a cause of action's elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The Court's charge in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Jennings v. Hunt Companies*, Inc., 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004)).

## B.    Rule 12(f)

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The moving party bears the burden on a motion to strike." *Rich v. Miller*, 634 F. Supp. 3d 66, 71 (S.D.N.Y. 2022). "Motions to strike are generally looked upon with disfavor," *Chenesky v. New York Life Ins. Co.*, No. 07-CV-11504, 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011),

and even more so where the motion seeks to strike class allegations from a complaint prior to class certification. *Id.*; *Thomas v. AAM Holding Corp.*, No. 24-CV-7253 (MKV), 2025 WL 2617450, at *3 (S.D.N.Y. Aug., 26, 2025); *Zachary v. BG Retail, LLC*, 716 F. Supp. 3d 339, 344 (S.D.N.Y. 2024).  This general rule has exceptions, however.  First, where a motion to strike class allegations addresses issues that are "separate and apart from the issues that will be decided on a class certification motion," a court may consider it.  *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012).  Similarly, a court should consider a motion to strike which makes clear that, as a matter of law, "the putative class action claim will not proceed."  *Bank v. CreditGuard of Am.*, No. 18-CV-1311 (PKC) (RLM), 2019 WL 1316966, at *4 (E.D.N.Y. Mar. 22, 2019).  This District recently held that "striking the class allegations may be appropriate . . . where a contractual waiver clearly precludes the possibility that a plaintiff's claim may be brought on a class-wide basis."  *Haymount Urgent Care PC v. GoFund Advance, LLC*, 635 F. Supp. 3d 238, 240-41 (S.D.N.Y. 2022).

## DISCUSSION

Defendants NYU and Greystar contend that Plaintiff was precluded from bringing his class action claims by the Class Action Waiver in the underlying lease, and they accordingly move to strike any class allegations from the Complaint pursuant to Rule 12(f).  *See* NYU Mot. to Dismiss at 5-8; GREP Mot. to Dismiss at 6-9; *see also* Fed. R. Civ. P. 12(f).

**A.    Class Action Waiver**

Plaintiff does not contest that he (and his non-party wife) voluntarily signed the Class Action Waiver, but rather "raises a 'grab-bag' of vague and unsupported arguments that the [class action waiver] is unenforceable." *Thomas*, 2025 WL 2617450, at *4 (citation omitted).  Specifically, Plaintiff argues that neither Defendant has the power to enforce the Waiver—or at least that such a question requires more factual inquiry than is feasible at the pleadings stage—and that "the Court is free to find [it] unconscionable."  *See* ECF No. 53 ("Pl. Opp'n to NYU Mot.") at 4-7; ECF No. 54 ("Pl. Opp'n to GREP Mot.") at 4-6.  Neither argument has merit.

**1.  Defendants' Enforcement Authority**

Plaintiff's contention that Defendants lack enforcement power rests principally on the fact that neither is an express signatory to the lease.  *See* Pl. Opp'n to NYU Mot. at 4; Pl. Opp'n to GREP Mot. at 4; *see also* 2023 Lease at 2. That argument takes different forms as it relates to each Defendant.  Plaintiff attacks NYU's status as a successor-in-interest to The Lanthian's prior owner, Verbena, and claims that, without that status, NYU may not enforce this provision of the lease.  Pl. Opp'n to NYU Mot. at 4-6.  As to Greystar, Plaintiff contends that its "agency relationship"—a prerequisite to enforcement—with The Lanthian's

8

owner is a "a fact intensive inquiry that is inappropriate at this stage of the proceedings." Pl. Opp'n to GREP Mot. at 5.

### a. NYU

The language of the 2023 Lease establishes that NYU is an appropriate party to enforce its provisions. NYU is the current owner and titleholder of The Lanthian. The 2023 Lease defines the term "owner" as used throughout the lease as the "title holder of ['the property on which the apartment home is located']." 2023 Lease at 34. It is true that Defendant NYU was not an original signatory to 2023 Lease, but when it received title to The Lanthian on August 30, 2023, it became the building's "owner" per the lease's terms. *See* 2023 Lanthian Deed at 5.

Reading the Class Action Waiver in light of this definition, it is clear that Defendant NYU inherited the power of enforcement once it became the Lanthian's "title holder." 2023 Lease at 34. The Waiver states that it is a part of the agreement between the "The Lanthian (Landlord)" and Plaintiff and his wife, and states that "[y]ou" (Plaintiff) "agree that you hereby waive your ability to participate either as a class representative or member of any class action claim(s) against *us* or our agents." *See* 2023 Lease at 33 (emphasis added). The lease defines "[t]he terms 'we,' 'us,' and 'our'" to refer to either the owner or management company, as context dictates. *Id.* at 34. By signing this provision, Plaintiff gave up

9

his right to bring a class action against NYU, the title holder and "owner" of The Lanthian.

To the extent there is any ambiguity as to whether a new owner can enforce the provisions of the 2023 Lease, that issue is resolved by explicit contractual language. The 2023 Lease incorporates the "terms and conditions of [Plaintiff's] expiring lease, except as modified." 2023 Lease at 32. The 2021 Lease and the 2022 Lease, in turn, both defined "Landlord" as "the owner listed above (or any of the owner's successors[] in interest or assigns)." 2021 Lease, ¶ 1; 2022 Lease, ¶ 1. Under New York law, "a successor in interest is one who follows another in ownership or control of property and retains the same rights as the original owner, with no change in substance." *Wien & Malkin LLP v. Helmsley-Spear, Inc.*, 6 N.Y.3d 471, 482 n.12 (2006) (cleaned up).

Contrary to Plaintiff's arguments, Pl. Opp'n to NYU Mot. at 4-6, New York courts routinely treat purchasers of real property as successors-in-interest that can enforce the terms of a pre-existing lease. *See, e.g.*, *Peak Dev., LLC v. Constr. Exch.*, 953 N.Y.S.2d 755, 756 (4th Dep't 2012) (holding, with respect to a purchaser of leased property, that it is a "well-established principle" in New York law that "a successor-in-interest to real property takes the premises subject to the conditions as to the tenancy, including any waiver of rights, that its predecessor in title has established" (cleaned up)); *Reltron Corp. v. Voxakis Enters., Inc.*, 395 N.Y.S.2d 276, 279 (4th Dep't 1977) ("The owner of leased property may sell it and if there is no reservation the grant conveys the lessor's interest in the lease. Similarly, the

transfer of the lessor's reversion is a transfer of the lease and of its rights and obligations, whether with the consent of the tenant or without it." (cleaned up)); *see also Balram v. Etheridge*, 449 N.Y.S.2d 389, 391 (Civ. Ct. 1982) ("The burdens and privileges of the lease run with the land."). As the purchaser of The Lanthian, NYU can therefore enforce the terms of the 2023 Lease.

Plaintiffs' own arguments are belied by their position in this litigation. The Amended Complaint repeatedly states that Plaintiff entered into the leases in question with the Defendants. Am. Compl., ¶¶ 8, 10, 12, 13, 42, 85, 86. Indeed, if NYU is not deemed a party to the lease agreements, then it is difficult to discern how Plaintiff could proceed against NYU in its role as landlord.

### b. Greystar

To avoid the Waiver's unambiguous application to both the owners and their agents, Plaintiff disputes Greystar's status as an agent and the scope of its agency as it relates to the allegations of misconduct. Pl. Opp'n to GREP Mot. at 5 ("Greystar's argument that it was an intended third party beneficiary of the class waiver agreement only makes sense if Plaintiff's allegations solely relate to actions that Greystar took within its agency relationship with the prior landlord."). Taking Plaintiff's own allegations as true is sufficient to rebut this argument.

Plaintiff alleges that Greystar "was the property manager" for the relevant period and that it "maintained consistent communication with [him] . . . regarding Defendant's method of disbursing tenant's security deposits." Am. Compl., ¶¶ 15, 19. He points to interactions with Greystar employees and Greystar's

11

representations of itself as the Lanthian's manager.  *Id.*, ¶¶ 14-16, 23-26.  And in direct contradiction to his argument, Plaintiff's' complaint alleges that "each of the[] Defendants acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendant within the course and scope of the agency, regarding the acts and omissions alleged."  *Id.*, ¶ 21.  Thus, the Complaint alleges that Greystar is NYU's agent.  Greystar is thus an appropriate party to enforce the Class Action Waiver.

**B.    Enforceability of the Class Action Waiver**

Having determined that both Defendants have the authority to enforce the Class Action Waiver, the Court now addresses whether the provision is itself unconscionable or otherwise unenforceable.

As a general matter, class action waivers in the context of arbitration agreements are regularly enforced under New York State law.  *See, e.g., Horton v. Dow Jones & Co., Inc.*, 804 Fed. Appx. 81, 84-85 (2d Cir. 2020) (enforcing a class action waiver under New York contract law); *Haymount Urgent Care PC v. GoFund Advance, LLC*, 635 F. Supp. 3d 238, 246 (S.D.N.Y. 2022) ("New York courts[] routine[ly] enforce[] . . . class action waivers"); *Tsadilas v. Providian Nat. Bank*, 786 N.Y.S.2d 478, 480 (1st Dep't 2004) ("Under New York law, 'a contractual proscription against class actions . . . is neither unconscionable nor violative of public policy'" (quoting *Ranieri v. Bell Atlantic Mobile*, 759 N.Y.S.2d 448, 449 (1st Dep't 2003)).  Where, as here, a contract contains an independent class action waiver—that is, a class action waiver with no arbitration agreement—courts apply

12

a two-step framework for determining its enforceability. *See U1it4Less, Inc. v. FedEx Corp.*, No. 11-CV-1713 (KBF), 2015 WL 3916247, at *4 (S.D.N.Y. June 25, 2015). First, the Court must ask "if the class action waiver at issue is unconscionable under the applicable state law." *Id.* If not, the Court then asks "if the [relevant] statutory scheme . . . suggests legislative intent or policy reasons weighing against enforcement of such a waiver." *Id.*

### 1. Unconscionability

Under New York law, an unconscionable contractual provision is one which "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Id.* (citing *Gillman v. Chase Manhattan Bank, N.A.*, 537 N.Y.S.2d. 787, 791 (N.Y. 1988)). This requires a showing of both procedural and substantive unconscionability. *Id.*

"The procedural element of unconscionability requires an examination of the contract formation process and the alleged lack of meaningful choice." *Gillman*, 537 N.Y.S.2d at 791. This involves factors such as "(1) the size and commercial setting of the transaction; (2) whether there was a 'lack of meaningful choice' by the party claiming unconscionability; (3) the 'experience and education of the party claiming unconscionability;' and (4) whether there was 'disparity in bargaining power.'" *U1it4Less*, 2015 WL 3916247, at *4 (quoting *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 787 (2d Cir. 2003)). In this respect, Plaintiff argues only that, "considering the lack of an arbitration agreement and the difference in bargaining

13

power between the parties, the Court is free to find that the class waiver is unconscionable." Pl. Opp'n to GREP Mot. at 5. There is little merit to that contention.

For one, the lack of arbitration agreement in the 2023 Lease does not alter what is otherwise routine enforcement of class action waivers under New York law. In *U1it4Less*, this Court addressed that exact point, noting that "no legal principle or policy principle" mandates treating class action waivers *with* arbitration agreements "as more sacrosanct than waivers in context of a contract *without* an arbitration agreement." *U1it4Less*, 2015 WL 3916247, at *4 (emphasis added). Moreover, while there is certainly a difference in bargaining power between Plaintiff and Defendants, that alone is not enough to render a provision of the lease unconscionable under New York law. *See id.* ("That the agreements are standard form and [the Defendant] holds more bargaining power than plaintiff is not in and of itself sufficient to invalidate a binding business transaction."). The Class Action Waiver here is a separate, unambiguous rider attached to the 2023 Lease, which Plaintiff and his wife signed. *See* 2023 Lease at 33. Plaintiff does not allege that he was unable to attain other housing arrangements if he objected to the lease, nor does he contend that he lacked the "experience [or] education" to comprehend the ramifications of the Class Action Waiver. *Dallas Aerospace*, 352 F.3d at 787. The Class Action Waiver is thus not procedurally unconscionable.

Under New York law, substantive unconscionability looks to whether "the terms [of the agreement] were unreasonably favorable to the party against whom

14

unconscionability is urged." *Gillman*, 537 N.Y.S.2d at 792; *see also KLS Diversified Master Fund, L.P. v. McDevitt*, 532 F. Supp. 3d 126, 137 (S.D.N.Y. 2021) (noting that a "bad bargain" does not rise to the level of substantive unconscionability). Although procedural unconscionability has not been established, and both procedural and substantive elements are typically required for unconscionability, "there have been exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *Gillman*, 537 N.Y.S.2d at 792. To this end, Plaintiff argues that "the class waiver would be unconscionable because enforcing it would exculpate Defendant due to the small likelihood that individual plaintiffs would pursue claims that might be limited to a few dollars in interest." Pl. Opp'n to GREP Mot. at 6.

Plaintiff is not wrong about the practical limits on civil recovery inhered with the Class Action Waiver, but that is far from sufficient for a showing of substantive unconscionability, let alone the basis to finding the provision so "outrageous" as to render it unenforceable. *Gillman*, 537 N.Y.S.2d at 792. In dispelling a similar argument that class arbitration waivers effectively exculpate contracting parties from liability, the Supreme Court held that "the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy." *Am. Express. Corp. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013). Plaintiff is still free to pursue an individual claim against

15

Defendants, regardless of whether the cost of doing so could outweigh the potential recovery.

Perhaps most fatal to Plaintiff's argument, New York General Obligations Law § 7-109 provides for the enforcement of all sections, including Section 7-103(2-a), by the New York State Attorney General.  N.Y. Gen. Oblig. L. § 7-109 ("[A]n action or proceeding may be instituted by the attorney general . . . to compel compliance with such provisions and enjoin any violation or threatened violation thereof.").  The statute can thus be enforced, and the public policy ends served, even in the absence of class action litigation.

## 2.  Legislative Intent and Public Policy

Whether public policy or legislative intent demands non-enforcement of a class action waiver requires "look[ing] to the underlying statutory scheme and determin[ing] if 'contrary congressional command' requires the rejection of the waiver."  *U1it4Less*, 2015 WL 3916247, at *5 (quoting *Italian Colors*, 570 U.S. at 233).  Nothing in Section 7-103(2-a) indicates a preference for class claims over individual ones.  There is no mention of class actions in Title One of the New York General Obligations Law, nor is there any indication that class litigation must be available despite a contractual waiver.  This comports with the fact that claims under Section 7-103 necessarily involve individualized factual determinations.  The duty established in Section 7-103(2-a) requires "the person receiving [the security deposit]" to hold it in an account earning interest at "the prevailing rate earned by other such deposits made with banking organizations *in such area.*"  N.Y. Gen.

Oblig. L. § 7-103(2-a) (emphasis added). Any inquiries into violations of this duty are thus inherently local, undermining any notion that the law was intended to be enforced on a class wide basis.

Further, as discussed above, Section 7-109 of this title specifically provides for the New York Attorney General's enforcement of the title, including Section 7-103(2-a). *See* N.Y. Gen. Oblig. L. § 7-109. Although a provision for state enforcement does not speak directly to the Legislature's intent regarding class actions, it does indicate its contemplation of alternative means of enforcement.

The Court finds the Class Action Waiver in the 2023 Lease enforceable by both Defendants. Defendants' motions to strike plainly address issues "separate and apart from the issues that [would] be decided on a class certification motion," and as such are not "procedurally premature." *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (cleaned up). Striking the class allegations is appropriate here as "a contractual waiver clearly precludes the possibility that a plaintiff's claim may be brought on a class-wide basis." *Haymount Urgent Care PC v. GoFund Advance, LLC*, 635 F. Supp. 3d 238, 240-41 (S.D.N.Y. 2022). Accordingly, Defendants' motions to strike the class allegations are granted.

## C.    Supplemental Jurisdiction

CAFA was the sole basis for the Court's exercise of original jurisdiction over this matter. Plaintiff's remaining claims raise only issues of state law, *see* Am. Compl., ¶¶ 2-8, and the parties are not completely diverse, *see id.*, ¶¶ 9, 20. Plaintiff is a citizen of New York, and based on his uncontested allegation, so is

17

Defendant NYU.  *See id.*, ¶ 20.  While the Court retains subject matter jurisdiction over this matter notwithstanding the failure of the CAFA claim, *F5 Capital v. Pappas*, 856 F.3d 61, 76-77 (2d Cir. 2017) ("District courts may retain jurisdiction over state-law claims with minimally diverse parties where the class-action component of the complaint is dismissed."), the Court must determine whether it will exercise supplemental jurisdiction over the remaining individual state-law claims.  The Court concludes that it will not.

The retention of jurisdiction in such cases is discretionary, guided by the factors set forth at 28 U.S.C. § 1367.  *Id.* at 77 n. 14 ("[We do not] conclude that the district courts, on finding that a case cannot proceed as a class action, must adjudicate state law claims rather than remand them to state court. They can also, of course, dismiss them without prejudice for consideration in state courts."); *see also Weber v. Quest Diagnostics of Penn., Inc.*, No. 20-CV-00324, 2020 WL 6372382, at *5 (W.D.N.Y. Oct. 29, 2020) ("A federal court therefore has the discretion to either remand or exercise supplemental jurisdiction notwithstanding the dismissal of the CAFA-triggering claim.").

Under 28 U.S.C. § 1367(a), federal courts may hear any claim over which it does not have original jurisdiction if those claims "form part of the same case or controversy" as claims within the court's original jurisdiction.  The court "may decline to exercise supplemental jurisdiction . . . if . . . (1) the claim raises a novel or complex issue of State law, (2) the [state law] claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the

18

district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c).

The factors overwhelmingly weigh toward declining to exercise supplemental jurisdiction over Plaintiff's surviving claims.  Significantly, the only remaining claims before the Court pertain to state law.  *See* 28 U.S.C. § 1367(c)(2).  "Although there is no 'mandatory rule to be applied inflexibly in all cases,' it is clear that 'in the usual case in which all federal-law claims are eliminated before trial,' the balance of factors will weigh in favor of declining to exercise supplemental jurisdiction."  *TPTCC NY, Inc. v. Radiation Therapy Servs.*, 453 Fed. Appx. 105, 107 (2d Cir. 2011) (quoting *Carnegie-Mellon*, 484 U.S. at 350 n.7).  Without its class claims, this case involves an individual New Yorker's allegations against his New York landlord, raising questions only of New York law.  This is better left to a New York state court.  *See Weber*, 2020 WL 6372382, at *6 ("These are issues of New York law, and the New York state courts should decide them."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").  Moreover, this action is still in the pleading stage, meaning relatively little has been invested pre-discovery.  *See Weber*, 2020 WL 6372382, at *6 ("The case is therefore in a nascent stage which favors remand."); *see also TPTCC NY,* 453 Fed. App'x at 107 (citing the case's "infancy" in reversing the district court's decision to retain

19

supplemental jurisdiction). Finally, there appears to be no "extraordinary inconvenience" or "inequity occasioned" by dismissing this action without prejudice—Plaintiff remains free to "bring [his] claims across the street in the New York State Supreme Court." *Nix v. Off. of Comm'r of Baseball*, No. 17-CV-1241 (RJS), 2017 WL 2889503, at *4 (S.D.N.Y. July 6, 2017) (quoting *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006)) (internal quotations omitted). Therefore, the balance of relevant considerations leads the Court to deny exercising supplemental jurisdiction over Plaintiff's remaining individual claims pursuant to 28 U.S.C. § 1367(c).

## CONCLUSION

For the reasons stated herein, Defendants' motions to strike Plaintiff's class allegations are GRANTED. It is further ORDERED that Plaintiff's individual claims are DISMISSED without prejudice. The Clerk of Court is directed to terminate ECF Nos. 43 and 46 and to close the case.

SO ORDERED.

Dated:  March 24, 2026
     New York, New York

_____
JEANNETTE A. VARGAS
United States District Judge

20